**Cubler v. Trumark Financial Credit Union**

*Andrew M. Milz, Theodore E. Lorenz* and *Cary L. Fliter*, for appellant.

*Christine Debevec, Sandra A. Girifalco* and *Michelle C. Orloski*, for appellee.

TERESHKO, *J.*, April 4, 2013—

### PROCEDURAL HISTORY

Plaintiff, Cody Cubler, appeals from the order dated October 23, 2012, wherein this court granted defendant, Trumark Financial Credit Union's motion for judgment

on the pleadings thereby dismissing plaintiff's complaint.

## FACTUAL BACKGROUND

Plaintiff commenced this consumer class action by filing his complaint on April 16, 2012. (*See* docket). On or about October 28, 2008, plaintiff Cody Cubler (hereinafter "Cubler") purchased a used 2006 Chevrolet Cobalt from Enterprise Car Sales. (Complaint, ¶ 7). Purchase money financing was arranged through defendant Trumark Financial Credit Union (hereinafter "Trumark"). (Complaint, ¶ 7). Plaintiff's complaint alleges that Cubler's father, George Cubler co-signed the loan. (Complaint, ¶ 8). However, the retail installment sale contract states that George Cubler was the buyer of the vehicle, and plaintiff was the co-buyer. (Retail installment sale contract attached as Exhibit "B" to defendant's motion for judgment on the pleadings). Per the terms of the financing arrangement, Trumark was the secured party, and the monthly payments were to be made to Trumark. (Complaint, ¶ 9).

Sometime in the summer of 2009, after plaintiff failed to make the agreed-upon monthly payments, Trumark declared a default. (Complaint, ¶ 10). On or around August 13, 2009, Trumark, the lender and secured party, repossessed the vehicle. (Complaint, ¶ 11). Trumark sent George Cubler a notice of repossession on or about August 14, 2009; however, plaintiff's complaint alleges that Trumark failed to provide him (Cody Cubler) with notice required by Pennsylvania law pursuant to 13 Pa. C.S. §

9614[1] and 69 P.S. 623.[2] Plaintiff further claims that the notice sent to George Cubler was defective because it did not state the date and location of the auction or whether the auction sale was to be public or private. (Complaint, ¶¶ 16-17). The notice also failed to advise the borrower of the right to an accounting and the charge to the borrower for such accounting. (Complaint, ¶ 18). The notice also failed to inform the plaintiff that he had the right to redeem the vehicle up until the time of sale. (Complaint, ¶ 26). Plaintiff

---

1. § 9614. Contents and form of notification before disposition of collateral: consumer-goods transaction. In a consumer-goods transaction, the following rules apply:

(1) A notification of disposition must provide the following information:

(i) the information specified in section 9613(1) (relating to contents and form of notification before disposition of collateral: general);

(ii) a description of any liability for a deficiency of the person to which the notification is sent;

(iii) a telephone number from which the amount which must be paid to the secured party to redeem the collateral under section 9623 (relating to right to redeem collateral) is available; and

(iv) a telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available.

2. § 623. Repossession

D. When repossession of a motor vehicle, which is the subject of an installment sale contract, is effected otherwise than by legal process, the holder shall immediately furnish the buyer with a written "notice of repossession" delivered in person, or sent by registered or certified mail directed to the last known address of the buyer. Such notice shall set forth the buyer's right as to reinstatement of the contract, if the holder extends the privilege of reinstatement and redemption of the motor vehicle, shall contain an itemized statement of the total amount required to redeem the motor vehicle by reinstatement or payment of the contract in full, shall give notice to the buyer of the holder's intent to re-sell the motor vehicle at the expiration of fifteen (15) days from the date of mailing such notice, shall disclose the place at which the motor vehicle is stored, and shall designate the name and address of the person to whom the buyer shall make payment, or upon whom he may serve notice. The holder's notice shall also state that any personal property left in the repossessed vehicle will be held for thirty (30) days from the date of the notice's mailing. The personal property may be reclaimed within the thirty (30) day time period. Thereafter the property may be disposed of in the same manner as the motor vehicle and other collateral.

asserts that these same deficiencies existed in notices sent by Trumark to consumers across the Commonwealth of Pennsylvania, and these deficiencies form the basis of plaintiff's class action. (Complaint, ¶ 19).

Shortly after the notice was sent to George Cubler, Trumark sold the vehicle at auction; however, a deficiency remained after the sale proceeds were applied to the balance of the loan. (Complaint, ¶¶ 20-21). By letter dated September 18, 2009, Trumark sent a post-sale deficiency notice to George Cubler stating that the car was sold for $4,805.00, resulting in a deficiency of $6,969.40. (Complaint, ¶21). Plaintiff further alleges that this post-sale deficiency notice was never provided to him. (Complaint, ¶ 22).

Plaintiff commenced this action, individually and on behalf of all others similarly situated, by filing his complaint on April 16, 2012. (*See* docket). Plaintiff relies on 13 Pa. C.S. § 9625(c)(2) and 13 Pa. C.S. § 9625(e)(2) set forth below to supply the measure of damages for the deficiencies in the pre- and post-repossession notices sent by Trumark. (Complaint, ¶¶ 32, 36):

(c) *Persons entitled to recover damages; statutory damages in consumer-goods transaction.* — Except as otherwise provided in section 9628 (relating to nonliability and limitation on liability of secured party; liability of secondary obligor):

(2) if the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this chapter may recover for that failure in any event an amount not less than the credit service charge plus 10% of the principal amount

of the obligation or the time price differential plus 10% of the cash price.

(e) *Statutory damages: noncompliance with specified provisions.* — In addition to any damages recoverable under subsection (b), the debtor, consumer obligor or person named as a debtor in a filed record, as applicable, may recover $ 500 from a person that:

(5) fails to comply with section 9616(b)(1) (relating to explanation of calculation of surplus or deficiency), and the failure is part of a pattern or consistent with a practice of noncompliance;

Trumark filed an answer with new matter and counterclaim to Plaintiff's complaint on May 21, 2012. (*See* docket). Plaintiff filed preliminary objections to defendant's class counterclaim on June 11, 2012. (*See* docket). Trumark filed an amended answer with new matter and counterclaim on July 2, 2012, and plaintiff filed preliminary objections to defendant's amended class counterclaim on July 20, 2012. (*See* docket).

Trumark filed a motion for judgment on the pleadings on July 30, 2012 and a motion for protective order and stay of discovery on August 1, 2012. (*See* docket). Trumark answered plaintiff's preliminary objections on August 14, 2012. (*See* docket). Plaintiff filed a memorandum in opposition to Trumark's motion for judgment on the pleadings on August 20, 2012 and a memorandum in opposition to the motion for protective order and stay of discovery on August 21, 2012. (*See* docket). Trumark filed a reply in support of the motion for judgment on the pleadings as well as a reply in support of the motion for protective order and stay of discovery on August 31, 2012.

(*See* docket).

On October 1, 2012, this court granted Trumark's motion for protective order and stay of discovery and ordered all discovery stayed until this court ruled upon the motion for judgment on the pleadings. (*See* docket). In a separate order, this court overruled plaintiff's preliminary objections to defendant's amended class counterclaim and further ordered plaintiff to respond to Trumark's new matter and amended class certification within twenty (20) days. (*See* docket). On October 2, 2012, this court scheduled oral argument on the motion for judgment on the pleadings. (*See* docket).

On October 23, 2012, this court granted Trumark's motion for judgment on the pleadings on the basis that the relevant sections of the Pennsylvania Uniform Commercial Code, 42 Pa. C.S.A. § 9625(c)(2) and (e), are punitive in nature and therefore governed by a two-year statute of limitations, thus plaintiff's claims were untimely filed. (*See* docket).

On October 31, 2012, plaintiff appealed this court's dispositive order to Superior Court. (*See* docket). This court ordered plaintiff to file his 1925(b) statement of errors complained of on appeal on November 5, 2012 and plaintiff did so on November 19, 2012. (*See* docket).

Plaintiff raises the following issue on appeal:

1) Whether this court erred in concluding that the relevant sections of the Pennsylvania Uniform Commercial Code, 42 Pa. C.S.A. § 9625(c)(2) and (e), are punitive in nature and therefore governed by a two-year statute of limitations as opposed to the six year statute of limitations set forth at 42 Pa. C.S. § 5527(b),

thus barring plaintiff's claims as untimely.

## LEGAL ANALYSIS

Pennsylvania Rule of Civil Procedure 1034 provides, "After the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings may be entered where "there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." *Consolidation Coal Co. v. White*, 2005 Pa. Super. 155, P13, 875 A.2d 318, 325 (2005).

The standard of review on appeal is plenary. *Meehan v. Archdiocese of Philadelphia*, 2005 Pa. Super. 91, P4, 870 A.2d 912, 917 (2005). The appellate court must accept as true all well-pleaded allegations in the complaint. *Id.*

A reviewing court must confine its inquiry to the pleadings and may not consider inadmissible evidence. *Consolidation Coal Co. v. White*, 2005 Pa. Super. 155, P14, 875 A.2d 318, 326 (2005).

On appeal, the appellate court must "determine whether the trial court's ruling was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly be tried before a jury or by a judge sitting without a jury." *Id.* at P14, 325.

The determinative question here is which statute of limitations governs plaintiff's claims. Article 9 of the Uniform Commercial Code, which provides the repossession notice requirements as well as the measure of damages for noncompliance, does not contain a statute of limitations; therefore, the court must be guided by Chapter 55 of Title 42 of the Pennsylvania Consolidated

Statutes.[3] For the reasons that follow, this court determined that plaintiff's claims are governed by the two-year statute of limitations supplied by 42 Pa. C.S. §5524 for an action upon a statute for a civil penalty or forfeiture.

As used in 42 Pa. Cons. Stat. Ann. § 5524(5), an 'action upon a statute for a civil penalty or forfeiture' encompasses statutory civil actions that are penal, deterrent, punitive, and non-compensatory in nature." *Cohen v. Zarwin & Baum, P.C.*, CA No. 93-2145, 1993 U.S. Dist. LEXIS 18055, *6-*7 (E.D. Pa. Dec. 22, 1993), concluding that because 29 U.S.C. § 1132(a)(1)(A) provided a monetary penalty when the administrator of an ERISA-covered plan failed to comply with a participant's request for information, in the absence of a statute of limitations period for such breach of fiduciary duty claims in ERISA itself, § 5524(5) should be applied.

*Cecil Twp. Mun. Auth. v. North Am. Specialty Sur. Co.*, 836 F. Supp.2d 367, 383 (W.D. Pa. 2011).

Plaintiff claims damages pursuant to 42 Pa. C.S. §9625(c)(2) and (e)(5), which are as follows:

(c) *Persons entitled to recover damages; statutory damages in consumer-goods transaction.* — Except as otherwise provided in section 9628 (relating to nonliability and limitation on liability of secured party; liability of secondary obligor):

(2) if the collateral is consumer goods, a person that was

---

3. "If a statute does not provide a limitations period and the Pennsylvania Supreme Court has not ruled on the question, other courts will generally apply 'the most closely analogous limitations period.'" *Woody v. State Farm Fire and Cas. Co.*, 965 F.Supp. 691, 693 (E.D. Pa. 1997).

a debtor or a secondary obligor at the time a secured party failed to comply with this chapter may recover for that failure in any event an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time price differential plus 10% of the cash price.

(e) *Statutory damages: noncompliance with specified provisions.* — In addition to any damages recoverable under subsection (b), the debtor, consumer obligor or person named as a debtor in a filed record, as applicable, may recover $ 500 from a person that:

(5) fails to comply with section 9616(b)(1) (relating to explanation of calculation of surplus or deficiency), and the failure is part of a pattern or consistent with a practice of noncompliance;

These sections permit recovery by a debtor or secondary obligor regardless of actual injury in order to penalize the secured party for noncompliance and deter future violations. The Official Comments to 13 Pa. C.S. § 9625 provide:

Section (c)(2) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction. It is patterned on former Section 9-507(1) and is designed to ensure that every noncompliance with the requirement of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted.

Official Comment 4 to 13 Pa. C.S.A. §9625.

Subsection (e) imposes an additional $500 liability upon a person who fails to comply with the provisions

specified in that subsection.

Official Comment 5 to 13 Pa. C.S.A. § 9625.

In contrast to the damages provisions at issue here quoted above, a statute that is remedial in nature provides "redress of an injury or loss suffered by an individual." 82 C.J.S. Statute § 529. Here, the relevant sections of the Pennsylvania Uniform Commercial Code provide for recovery regardless of whether any injury or actual loss resulted. The goal of the damages provisions utilized by plaintiff in the instant matter is to prevent future violations rather than to make the complaining party whole.

If this court accepts plaintiff's contention that the statute was intended to be compensatory, awarding plaintiff damages would produce an illogical result because plaintiff did not suffer any actual injury. Plaintiff's vehicle sold at auction for $4805.00, which was slightly higher than the vehicle's listed trade in value. (Complaint, ¶ 21). A deficiency of $6969.40 remained after the proceeds were applied to the balance of the loan. *Id.* Neither plaintiff nor his father had to pay this deficiency. Plaintiff has not suffered any injury or out of pocket loss as a result of Trumark's alleged violations.

*In re: Koresko*, 91 B.R. 689, 699 (Bankr. E.D. Pa. 1988), discussed the purpose of the notices required under the Pennsylvania Uniform Commercial Code in connection with the repossession of a vehicle and defended the statutory damage calculation for failure to comply with the notice requirements pursuant to 13 Pa. C.S. §9507, the precursor to 13 Pa. C.S. §9625, stating:

This figure may seem excessive, in light of the apparent inability of the Debtors, one of which was

a presumptively knowledgeable attorney, to do much to forestall the sale even had they known about it or to prove actual damages as a result of the failure to provide the requisite notice. However, the purpose of the notice of disposition of collateral is not merely to advise the buyers of the termination of their title (and, we hold, their redemption rights in the motor vehicle), but also to protect them from unfair imposition of a deficiency claim by allowing them to attend or bring other potential buyers to the sale and thus prevent a disposition of the collateral for less than its fair market value.

*In re: Koresko*, 91 B.R. 689, 699 (Bankr. E.D. Pa. 1988).

The court noted that the vehicle was sold for $1500.00 less than fair and reasonable value, and a deficiency in excess of $6000.00 remained. *Id.* In support of their award of statutory damages, the court reasoned further,

Even more to the point is the observation that statutory damages such as are provided in § 9507(a) are fixed by the legislature as a means of encouraging strict compliance with that law and not allowing the party violating the law to be extricated by the difficult prospect of the victim's proving actual damages.

*Id.*

This is consistent with this court's conclusion that damages pursuant to Pa. C.S. § 9625 constitute a statutory penalty in that they are penal, deterrent, punitive, and non-compensatory in nature; *Plaintiff is not required to prove any injury or loss in order to recover* (emphasis supplied).

While not binding on this court, a Tennessee district court also concluded in a case of first impression that

Tenn. Code Ann. § 47-9-625, which mirrors Pa. C.S. § 9625 and awards damages based upon a statutory formula for noncompliance with Uniform Commercial Code notice provisions, was subject to the one year statute of limitations applicable to statutory penalties. *Beard v. Vanderbilt Mortg. and Finance*, 2008 U.S. Dist. LEXIS 43519, P12 (2008). The court expressly disagreed with plaintiff's argument that § 47-9-325 was primarily remedial in nature. *Id.* at 11.

Likewise, a Virginia district court found,

This court is persuaded that the drafters of the Uniform Commercial Code did not intend to place a burden upon debtors, but instead intended to police lenders under Article 9. *See Merchandise Nat'l Bank of Chicago v. Scanlon*, 86 Ill. App. 3d 719, 408 N.E.2d 248, 251, 41 Ill. Dec. 826 (Ill. App. Ct. 1980) ("The purpose of imposing [9-507(1) statutory minimum] civil liability upon creditors is to force compliance with the protective provisions of section 9-504(3).")

*Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 551 (E.D. Va. 2000).

In characterizing the minimum statutory penalty available under section 9-625 of the Uniform Commercial Code, Barkley and Barbara Clark, leading commentators on Article 9, stated, "This minimum civil penalty, quietly tucked away in a corner of the statute, is probably the most glittering nugget of consumer protection found in all of Article 9." CLARK & CLARK, *Law of Secured Transaction under the UCC* § 4.12[4].

Thus, for the aforementioned reasons, this court found that plaintiff's claims were subject to a two year statute

of limitations because the intended purpose of the statute is not to compensate plaintiff, but to punish the offending entity and deter future violations.

Plaintiff asserts that his claims are subject to the catch all six year statute of limitations, which provides:

Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years.

42 Pa. C.S. § 5527(b).

However, because the damages sought by plaintiff are directly analogous to a civil penalty or forfeiture, plaintiff's claims are not subject to the catch all limitations period.

Plaintiff cites *Pantuso Motors, Inc. v. CoreStates Bank, N.A.*, 568 Pa. 601, 798 A.2d 1277 (2002), in support of the application of a six year statute of limitations However, *Pantuso Motors* is not applicable because it specifically addressed the limitations period applicable to a liquidated damages provision, which is not at issue here, 42 Pa. C.S. § 8104(b).

The Restatement (Second) of Contracts provides "Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." Restatement (Second) of Contracts § 356(1). A provision for liquidated damages is generally employed where the amount of damages would be difficult to quantify; whereas, the statute

at issue here is intended to deter future noncompliance regardless of whether or not damages exist. *See generally Geisinger Clinic v. Di Cuccio*, 414 Pa. Super. 85, 606 A.2d 509 (1992)(differentiating a liquidated damages provision from a penalty or forfeiture). Furthermore, the amount of liquidated damages must be reasonable because an award of liquidated damages is specifically prohibited from functioning as a penalty. Therefore, because the purpose of the statute here varies widely from a liquidated damages provision, plaintiff's argument that this court should employ a six year limitations period based upon the reasoning in Pantuso must fail.

Thus, for the reasons stated above, a two year limitations period is applicable to plaintiff's claims. Plaintiff commenced this action against Trumark on April 16, 2012, more than two and a half years after Trumark repossessed and sold his vehicle during the summer of 2009. Therefore, plaintiff's claims are barred by the statute of limitations.

## CONCLUSION

For the foregoing reasons, this court respectfully requests that the October 23, 2012 order granting defendant Trumark Financial Credit Union's motion for judgment on the pleadings be affirmed.